# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| A.R., | * | |
| | * | |
| Plaintiff, | * | Civil Action No. |
| v. | * | 1:24-cv-05193-SDG |
| | * | |
| CONGRESS HOTEL OF ATLANTA, | * | |
| LLC d/b/a CONGRESS HOTEL & | * | |
| SUITES, and JOHN DOES 1-5, | * | |
| | * | |
| Defendants. | | |

**DEFENDANT CONGRESS HOTEL OF ATLANTA, LLC d/b/a CONGRESS HOTEL & SUITES' MOTION TO DISMISS AND BRIEF IN SUPPORT**

COMES NOW Defendant Congress Hotel of Atlanta, LLC d/b/a Congress Hotel & Suites ("CHA") and, pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves to dismiss Plaintiff's Complaint for failure to state a claim, showing this Honorable Court as follows:

## INTRODUCTION

Plaintiff is an alleged sex trafficking victim seeking to recover damages against CHA under 18 U.S.C. § 1595(a) because it operated the hotel where she was trafficked. So, while there is no allegation that CHA itself trafficked Plaintiff, she nonetheless claims that CHA is liable for her injuries under a theory of beneficiary liability. In enacting 18 U.S.C. § 1595(a) and creating a civil cause of action under the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), Congress

balanced the need to address the insidious societal problem of human trafficking against the danger of unjustly punishing the myriad bystanders who unknowingly encounter it. Recognizing the inherent difficulty of identifying victims and perpetrators of human trafficking—who operate largely behind closed doors and continually adapt their methods to avoid detection—the legislature was careful to limit civil liability under the TVPRA to those persons or entities who *actively participate in* a human trafficking "venture" with *actual or constructive knowledge* of the crime they are facilitating. Under binding Eleventh Circuit authority, hotel operators like CHA do not fall within this category.

Simply put, Plaintiff's Complaint fails to plausibly allege that CHA participated in a venture with Plaintiff's traffickers as contemplated by the Eleventh Circuit. On this basis alone, Plaintiff has failed to plausibly allege that CHA can be held civilly liable to her under the TVPRA.

Similarly, Plaintiff asserts claims for public and private nuisance on the basis that CHA's failure to prevent instances of commercial sex at its establishment caused her to be sex trafficked. However, Plaintiff has failed to include any factual allegations demonstrating that CHA perpetuated a nuisance in her Complaint.

For these reasons, set forth more fully below, CHA respectfully requests that this Court issue an ORDER dismissing Plaintiff's Complaint with prejudice.

## RELEVANT FACTUAL BACKGROUND

**A.     The Parties**

Plaintiff is an individual pursuing this beneficiary liability claim against CHA under the pseudonym A.R. Doc. 1 at ¶ 1.[1] CHA is a Georgia limited liability company tasked with operating the Congress Hotel & Suites located at 5885 Oakbrook Parkway, Norcross, Georgia 30093 (the "Property"). *Id.* at ¶¶ 1-2, and 6. CHA is no longer operational and was administratively dissolved prior to the filing of the Complaint. *Id.* at ¶ 2.

**B.     Plaintiff's Allegations**

Plaintiff alleges that she was trafficked for sex at the Property from February 6, 2015, through February 9, 2015. *Id.* at ¶ 1, 11, 19.

Plaintiff alleges that CHA knew or should have known that she was being trafficked at the Property because her traffickers made several efforts to conceal their activity. *Id.* at ¶ 7. Specifically, Plaintiff alleges that her traffickers asked to be relocated to different guest rooms until they were satisfied with the seclusion of the room and its lack of nearby surveillance cameras. *Id.* at ¶¶ 7, 15, 16, and 17. CHA's staff acquiesced to the traffickers' room relocation requests. *Id.* at ¶¶ 7 and 17.

---

[1] CHA does not oppose Plaintiff's Motion for Protective Order and Leave to Proceed Anonymously.

Plaintiff further alleges that, on at least one occasion, CHA's cleaning staff observed Plaintiff in the guest room wearing only her bra and panties alongside her two traffickers. Doc. 1 at ¶¶ 7 and 21. There was a firearm in the room. *Id.* The traffickers told CHA's staff to leave the room. *Id.* Before the staff member left the room, Plaintiff got clean towels from them and handed over a trash bag that contained used condoms. *Id.* The staff member did not report or otherwise investigate this scene any further. *Id.* at ¶ 22.

Plaintiff also alleges that CHA's staff observed approximately 12 to 15 adult males visiting the guest room over the course of her three days at the Property and did nothing to intervene. *Id.* at ¶¶ 7, 19, and 20. Plaintiff further claims that she exhibited numerous well-known and visible signs of sex trafficking victims including her young age, revealing clothing, being escorted by two armed adult men, the fact that the men were controlling and monitoring her behavior, and the numerous adult male strangers that would visit her room. *Id.* at 25.

Furthermore, Plaintiff alleges that CHA knew or should have known of sex trafficking occurring more generally at the Property. *Id.* at ¶ 7. She claims to have observed numerous other girls and women being sold for sex at the Property. *Id.* at ¶ 23. She also claims to have observed numerous other pimps or traffickers in charge of these individuals. *Id.*

In addition to her own account, Plaintiff relies on the declarations of two individuals, Brittney Moore ("Moore") and Linda Alvarez ("Alvarez"), who similarly claim to have observed signs of sex trafficking at the Propery. Doc. 1 at ¶¶ 26-29; *see* Ex. A and B to Doc. 1.

Moore stayed at the Property for "about four to five months in early 2014". *Id.* at ¶ 27. During this timeframe, she "observed that two people named Pink and Jit were 'pimping out lots of young girls at the [Property].'" *Id.* According to Moore, Pink paid unidentified front desk employees to act as lookouts and these individuals would "come hang out and party" in Pink's room. *Id.* Moore also claims that an unidentified housekeeper would have sex with some of the girls that Pink kept at the Property. *Id.* Moore also claims that she saw an unidentified front desk worker disconnect the wires from the surveillance cameras next to Pink's room on a particularly busy night. *Id.*

Alvarez visited the Property in July of 2014. *Id.* at ¶ 29. She claims to have observed "girls working as prostitutes walking up to car windows and random men around the [Property] and the girls would proposition the men by talking to them about prices for sex." *Id.* She also claims to have observed the girls getting into cars with random men and driving to a dark corner of the parking lot for 15 or 20 minutes. *Id.* Alvarez further claims that she saw about six girls who appeared to be prostitutes at the Property on average. *Id.* She also claims that she saw employees walking

5

around the Property but never saw them intervene to stop or discourage the illegal activity. *Id.*

## ARGUMENT AND CITATION OF AUTHORITY

### A. Legal Standard

Considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Taylor v. Board of Regents of University System of Georgia*, 2022 WL 4857906, *3 (N.D. Ga. Oct. 3, 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive dismissal, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A plaintiff must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Id.*

### B. Plaintiff's Complaint Fails to State a TVPRA Claim Against CHA.

To plead a beneficiary liability claim under the TVPRA, a plaintiff must plausibly allege that the defendant "(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021). Here, Plaintiff's allegations fail to establish that CHA

"participated" in the venture that trafficked Plaintiff. The failure to plausibly allege this essential element is fatal to Plaintiff's TVPRA claim.

The TVPRA does not impose any affirmative obligation on private businesses to police or prevent human trafficking, and an alleged failure to prevent human trafficking is not tantamount to "participation" in it. *See*, *e.g.*, *Red Roof Inns, Inc.*, 21 F.4th at 728; *see also*, *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, at *12-13 (D.N.H. Sep. 28, 2020) (allegation that franchisor "failed to take reasonable measures to stop trafficking from occurring in their hotels" was insufficient to establish "participation" element of TVPRA claims); *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-28 (N.D. Tex. 2021) (allegations that hotel franchisors "failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties" were "not sufficient to plead that [franchisors] directly participated in a specific venture that trafficked Plaintiff"). Indeed, "observing something is not the same as participating in it." *Red Roof Inns, Inc.*, 21 F.4th 714 at 727.

As this Court has previously recognized, the participation prong of the TVPRA analysis requires plaintiffs to "(i) show at least some connection between the hotel operator's and the trafficker's actions (the *common* venture) and (ii) identify what actions the operator took to advance the object of the joint undertaking

7

(*participation* in the common venture)." *G.W. v. Northbrook Indus., Inc.*, No. 1:20-cv-05232-JPB, 2024 U.S. Dist. LEXIS 114861, at *11 (N.D. Ga. June 14, 2024) (emphasis original). Moreover, a hotel operator does not participate in a venture with a trafficker by simply renting rooms to them and collecting rental fees. *Red Roof Inns, Inc.*, 21 F.4th at 727; *see K.H. v. Riti, Inc.*, No. 23-11682, 2024 U.S. App. LEXIS 3127, at *10 (11th Cir. Feb. 9, 2024) (applying the same rationale to a hotel operator); *see, e.g.*, *Doe (S.J.C.) v. Esa P Portfolio LLC*, No. 1:24-CV-02423-JPB, 2024 U.S. Dist. LEXIS 207479, at *12 (N.D. Ga. Nov. 15, 2024) (finding that the plaintiff failed to plausibly allege the participation prong where the complaint did not contain any allegations that hotel employees assisted in the trafficking by acting as police lookouts, that the trafficker and hotel employees had any sort of close relationship, that hotel employees witnessed abuse, or that hotel employees ignored plaintiff's pleas for help).

Even accepting Plaintiff's allegations as true, she has failed to allege that CHA participated in a venture with her traffickers. At most, Plaintiff has alleged that CHA rented rooms to her traffickers and turned a blind eye to her trafficking. As demonstrated by the foregoing authority, however, such allegations do not sufficiently plead that CHA participated in a venture with Plaintiff's traffickers. Moreover, Plaintiff's assertion that CHA "participated in a venture by cooperating with and allowing Plaintiff's sex traffickers to harbor and traffic Plaintiff at [the

8

Property]" is a conclusory allegation entitled to no weight at the motion to dismiss stage. Doc. 1 at ¶ 44; *Iqbal*, 556 U.S. at 678.

The Complaint does not contain any factual allegations tending to show that CHA participated in her trafficking. Instead, the Complaint merely alleges that CHA provided her traffickers with the accommodations and services that would be expected of any hotel operator. Plaintiff claims that CHA participated in her trafficking by acquiescing to her traffickers' requests for different rooms. Doc. 1 at ¶¶ 7, 15, 16, and 17. Plaintiff claims that her traffickers were motivated by a desire to procure a guest room that would allow them to remain undetected in making these requests. *Id.* However, Plaintiff does not allege that her traffickers ever informed CHA's staff of their intentions or otherwise explained that they wanted a "secluded" guest room. Therefore, CHA's alleged efforts to provide Plaintiff's traffickers with a satisfactory room fall squarely within the type of guest services a hotel would be expected to provide. In other words, CHA took these actions to further the interest of the hotel enterprise, not Plaintiff's traffickers' enterprise.

Additionally, the declarations of Moore and Alavarez do nothing to establish that CHA participated in a venture with Plaintiff's traffickers. First, Alvarez does not claim to have been present at the Property during Plaintiff's trafficking. Ex. A to Doc. 1. Therefore, her own testimony demonstrates that she did not observe anything related to Plaintiff's trafficking specifically. Moreover, Alvarez merely claims that

9

CHA employees observed signs of trafficking and failed to intervene. Again, "observing something is not the same as participating in it." *Red Roof Inns, Inc.*, 21 F.4th 714 at 727. As such, even taking Alvarez's testimony as true—as well as the allegations of the Complaint that rely on this testimony—the Complaint does not plausibly allege that CHA participated in a venture with Plaintiff's traffickers.

Moore's testimony similarly fails to provide a factual basis for Plaintiff's conclusory assertion that CHA participated in a venture with her traffickers. Again, Moore's testimony establishes that she was not present at the Property during Plaintiff's trafficking. Therefore, none of her testimony relates to Plaintiff's trafficking specifically. And while Moore claims that CHA's employees associated themselves with a trafficker named Pink in 2014 by acting as lookouts, having sex with trafficking victims, and tampering with surveillance cameras, the Complaint does not allege that Pink was involved in any way with Plaintiff's trafficking. So, while Plaintiff's Complaint may allege that CHA participated in a sex trafficking venture with Pink in 2014, it does not allege that CHA participated in any venture with Plaintiff's traffickers in 2015. As such, Plaintiff has failed to plausibly allege that CHA participated in a venture with her traffickers and her TVPRA beneficiary liability claim must be dismissed.

**C.     Plaintiff's Complaint Fails to State a Nuisance Claim Against CHA.**

In addition to her TVPRA claim, Plaintiff also alleges that CHA is liable to her under multiple theories of Georgia nuisance law. However, Plaintiff's nuisance claims rely entirely on conclusory allegations that fail to establish the essential elements of her claims.

> *i.     Plaintiff failed to plausibly allege entitlement to damages for public nuisance.*

Under O.C.G.A. § 41-1-2, "[n]uisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals." A public nuisance "does not mean that the condition allegedly causing the [public] nuisance must have actually hurt or injured everyone in the area, but it does mean that it must injure those of the public who actually come in contact with it." *White v. Ga. Power Co.*, 265 Ga. App. 664, 668 (2004), citing *City of Douglasville v. Queen*, 270 Ga. 770, 774 (1999) ("A public nuisance exists if the act complained of affects rights which are common to all within a particular area."). *Compare Atlanta Processing Co. v. Brown*, 227 Ga. 203, 206-207 (1971) (holding that the plaintiff stated a claim for public nuisance based on noxious odors wafting from an animal processing plant); *Watkins v. Pepperton Cotton Mills*, 162 Ga. 371, 374 (1926) ("An illustration of a public nuisance is the unauthorized placing of an obstacle across a public

11

highway."). As such, a plaintiff asserting a claim for public nuisance must sufficiently plead that the alleged nuisance injures all or most people who come in contact with it. *See Doe v. St. Joseph's Catholic Church*, 357 Ga. App. 710, 717 (2020) (rev'd on other grounds).

Here, Plaintiff's Complaint fails to include sufficient factual allegations to substantiate her claim for public nuisance. Instead, it merely offers several conclusory statements reciting the essential elements required to establish the existence of a public nuisance. Plaintiff claims that "[t]he [Property's] history of rampant crime and illegal sex activity created a spillover effect that led to other crime occurring in the surrounding area." Doc. 1 at ¶ 58. However, the Complaint does not offer any factual allegations to support this claim. Even when considering the allegations incorporating the testimony of Moore and Alvarez, the Complaint merely alleges that either sex trafficking or prostitution occurred at unspecified intervals in 2014 and 2015. Doc. 1 ¶¶ 27 and 29. Furthermore, the Complaint does not include any factual allegations whatsoever that the area surrounding the Property was affected by instances of crime on the Property. Finally, Plaintiff's allegations do not demonstrate that all or most of the individuals visiting the Property would be injured by the alleged nuisance it created. On this point, Plaintiff's allegations are remarkably similar to those asserted by the plaintiffs in *St. Joseph's Catholic Church*. There, the plaintiffs alleged that the defendant created a public nuisance by

employing a priest that allegedly molested numerous individuals over the course of several years. *St. Joseph's Catholic Church*, 357 Ga. App. at 717. The Georgia Court of Appeals affirmed the trial court's dismissal of this public nuisance claim, reasoning that the allegations of plaintiffs' molestation were not sufficient to state a claim for public nuisance because these isolated incidents would not harm all persons who came into the sphere of the church's operations. *Id.* Here, Plaintiff claims to have been injured by being forced to engage in commercial sex by her traffickers. By extension, she is claiming that any member of the public that visited the Property would suffer this same injury. However, the Complaint does not include any factual allegations that anyone visiting the Property would be sex trafficked. As such, Plaintiff has failed to plausibly allege that CHA's operation of the Property constituted a public nuisance.

   ii. *Plaintiff failed to plausibly allege entitlement to damages for private nuisance.*

To establish CHA's liability for private nuisance, Plaintiff must establish that CHA created or maintained a continuous or regularly repeated act or condition on the Property that caused her injury. *Bethany Group, LLC v. Grobman*, 315 Ga. App. 298, 302 (2012). Here, Plaintiff has failed to plausibly allege that CHA created a private nuisance because she failed to plausibly allege that sex trafficking at the Property was continuous or regularly repeated. Setting aside Plaintiff's conclusory allegations on this issue, the Complaint merely alleges that an unspecified number

13

of minors were trafficked at the Property in 2014. Doc. 1 at ¶ at 27. However, this generalized allegation does not establish that sex trafficking at the Property was continuous or regularly repeated. As such, Plaintiff has failed to plausibly allege that CHA's operation of the Property constituted a private nuisance.

### iii. *Plaintiff failed to plausibly allege nuisance per se.*

O.C.G.A. § 41-3-1 provides that:

> Whosoever shall knowingly erect, establish, continue, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges shall be guilty of maintaining a nuisance; and the building, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance and may be enjoined or otherwise abated as provided in this chapter.

O.C.G.A. § 41-3-1(b).

"Sexually related charges" in this context refers only to violations of certain criminal statutes when returned in an indictment by a grand jury or "[f]iled as an accusation by a prosecuting attorney that results in a conviction, a plea of guilty under any first offender statute, a plea of nolo contendere, adjudication in an accountability court, or a dismissal as a result of successful completion of a pretrial diversion program." O.C.G.A. § 41-3-1(a).

Here, Plaintiff has not set forth any factual allegations establishing that sexually related charges were brought against any entity or individual based on the

specific criminal statutes enumerated in O.C.G.A. § 41-3-1(a). As such, Plaintiff has failed to plausibly allege CHA's operation of the Property constituted nuisance *per se*.

## CONCLUSION

Based on the foregoing arguments and authority, CHA respectfully requests that this Court issue an ORDER dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted this 10th day of January, 2025.

|  |  |
|---|---|
| **LEWIS BRISBOIS BISGAARD**<br>**& SMITH LLP**<br>600 Peachtree Street, Suite 4700<br>Atlanta, Georgia 30308<br>(404) 348-8585<br>(404) 467-8845 Facsimile<br>Cameron.Mobley@lewisbrisbois.com | */s/ Cameron A. Mobley*<br>CAMERON A. MOBLEY<br>Georgia Bar No. 613048<br><br>*Attorney for Defendant Congress Hotel of Atlanta, LLC d/b/a Congress Hotel & Suites* |

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14 point size.


Dated: January 10, 2025.

>                                          /*s/ Cameron A. Mobley*_____
>                                          Cameron A. Mobley
>                                          Georgia Bar No. 613048

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, I electronically filed the foregoing ***DEFENDANT CONGRESS HOTEL OF ATLANTA, LLC d/b/a CONGRESS HOTEL & SUITES' MOTION TO DISMISS AND BRIEF IN SUPPORT*** with the Clerk of Court using the CM/ECF filing system which will automatically send e-mail notification of such filing to the following counsel of record:

Patrick J. McDonough
pmcdonough@atclawfirm.com
Tyler A. Dillard
tdillard@atclawfirm.com
Jonathan S. Tonge
jtonge@atclawfirm.com
Jennifer M. Webster
jwebster@atclawfirm.com
ANDERSON, TATE & CARR, P.C.
One Sugarloaf Centre 1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097

*Attorneys for Plaintiff*

/s/ Cameron A. Mobley
CAMERON A. MOBLEY
Georgia Bar No. 613048

***Attorney for Congress Hotel of Atlanta, LLC d/b/a Congress Hotel & Suites***