UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

A.R.,

     Plaintiff,

v.

CONGRESS HOTEL OF
ATLANTA, LLC d/b/a
CONGRESS HOTEL & SUITES,
and JOHN DOES 1-5,

     Defendants.

CIVIL ACTION FILE

NO. 1:24-CV-05193-SDG

---

## **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Tyler A. Dillard
Georgia Bar No. 115229
tdillard@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

Andersen, Tate & Carr, P.C.
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## INTRODUCTION

Fourteen-year-old A.R. was unlawfully harbored, raped, and sex trafficked at Defendant's Congress Hotel & Suites over the course of four days, from February 6, 2015 through February 9, 2015. The men who trafficked A.R. at the hotel were criminally convicted. A.R.'s child trafficking was condoned, assisted, and facilitated by the hotel, which has a history of involvement in the sale of young girls for sex at the hotel.

Defendant admits A.R.'s complaint alleges that it participated in sex trafficking ventures at the hotel in the months prior to A.R.'s trafficking.[1] Thus, Defendant makes no argument that the complaint does not contain well-pled allegations based on specific witness affidavits showing that the hotel was operated to permit illegal sex trafficking. Instead, Defendant takes the relevant factual allegations, views them solely in isolation from one another, and discards each without considering the facts taken in context, as a whole.

That's wrong. At the motion to dismiss stage, the complaint is "read as a whole." *Emerson Elec. Co. v. SIPCO LLC*, 1:15-cv-319, 2016 WL 11908348, at *36 (N.D. Ga. Dec. 22, 2016), *report and recommendation adopted,* 1:15-cv-319, 2017 WL 11834355 (N.D. Ga. Jan. 13, 2017); *see, e.g., Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Defendant's Motion to Dismiss for Failure to State a Claim, ECF No. 13, at 10 ("So, while Plaintiff's Complaint may allege that CHA participated in a sex trafficking venture with Pink in 2014[.]").

1

698–99, 129 S. Ct. 1937, 1961 (2000) (Souter, J., dissenting) ("Taking the complaint as a whole . . . ."); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 131 S. Ct. 1309, 1323 (2011) ("Viewing the allegations of the complaint as a whole . . . .").

Taken as a whole, with inferences properly drawn in favor of the 14-year-old A.R., the following facts and reasonable inferences from the complaint require the denial of Defendant's motion:

As Defendant concedes, Defendant knowingly participated in sex trafficking ventures at the hotel in 2014, the months leading up to A.R.'s trafficking in February 2015. At that time, employees had sex with young girls being sold by pimps and acted as lookouts for illegal sex trafficking, even disconnecting security cameras to remove evidence of the sex trafficking. These ventures involved both front desk employees and housekeepers. The inference from these facts is that the hotel and its staff had a policy of knowingly assisting and allowing the sex trafficking of young girls at the hotel. This policy included the careful placement of sex trafficking operations to avoid detection and the creation of implicating evidence on hotel security cameras.

Just a few months later, A.R. is brought to the hotel and sold for sex as a 14-year-old. Her two adult male traffickers did not like the security cameras near the first two rooms the hotel offered and so, as they had with other trafficking ventures, hotel staff found the traffickers a secluded room without security cameras directly

2

outside the door. This assists the traffickers by helping them elude the police, as well as to ensure there will be less evidence available to convict them if they are caught. Then, over a few days, 12–15 different men visited A.R.'s room and paid to rape her, while the traffickers waited outside the door. The staff again assisted by permitting this obvious sex trafficking to continue unabated. Given the hotel's policy to assist traffickers, the extension of this policy *as to* A.R., is an unsurprising inference. But in case there was any doubt as to what was occurring in the room, hotel staff came in the room multiple times and saw the 14-year-old in her bra and panties, saw the two older men with her, saw the assault-style gun in the room, and proceeded to simply provide A.R. with extra towels and take the trash bag of used condoms away for the traffickers. Again, the hotel's policy of permitting and facilitating sex trafficking was apparent. The obvious trafficking of A.R. was permitted to continue and the hotel staff assisted the trafficking by providing extra towels[2] and by disposing of evidence, the used condoms.

These are the most obvious inferences to be drawn from the above facts. There are others. Defendant's arguments only work if—as Defendant does throughout its motion—all inferences are drawn to explain away the obvious in favor of Defendant's interpretation, which of course is the opposite of what the Court must

---

[2] A person being repeatedly sold for sex needs several towels a day to clean herself after each encounter and before the next buyer.

3

do in considering a motion to dismiss.

The facts and reasonable inferences therefrom show A.R.'s complaint is well-pled and Defendant's motion should be denied.

## I.    STATEMENT OF FACTS

Defendant's hotel was a hotbed of illegal commercial sex activity. Prior to, during, and after A.R.'s minor sex trafficking, sex trafficking and prostitution occurred openly, obviously, and regularly at the hotel, involving numerous other females, traffickers, buyers, all with the hotel's knowledge and assistance. [ECF No. 1, ¶ 7]. In the dead of winter, A.R. observed numerous other women and children loitering in the hotel's public areas, dressed in provocative clothing or lingerie. *Id.* These women and children openly solicited adult men for sex and accompanied them back to their hotel rooms. *Id.* Despite the obvious nature of this activity, which was clearly visible to Defendant, Defendant's hotel staff allowed and facilitated the illegal activity. *Id.*

Eye-witness Brittney Moore stayed at the hotel for about four to five months in 2014, immediately prior to Plaintiff's trafficking in early 2015. *Id* ¶ 27, Ex. A. During this time, Moore observed two people named Pink and Jit pimping out lots of "young girls" at the hotel. *Id.* Moore saw a minimum of ***20 different girls*** who Pink and Jit sold for sex at the hotel while Moore was there. *Id.* These girls were all

4

very young and ranged in age from about 15-years-old to about 22-years-old.[3] *Id.* The girls were dressed in fishnet stockings, tops with holes showing their nipples, and other provocative clothing. *Id.* Pink took pictures of the girls to post in ads selling them for sex, and sometimes a hotel front desk employee was in the room while this was going on. *Id.* Pink told Moore that she had people at the hotel "in her pocket." *Id.* Pink paid the front desk employees to be lookouts and allow the sex trafficking to continue at the hotel, and employees hung out and partied in Pink's room. *Id.* One of Defendant's housekeepers had sex with some of the girls Pink trafficked at the hotel. *Id.* Moore watched as a hotel front desk worker disconnected the wires from the cameras next to Pink's room on a particularly busy night. *Id.*

Another eye-witness, Linda Alvarez, visited the hotel in July 2014, about six months before A.R.'s minor sex trafficking in February. *Id.* ¶ 29, Ex. B. While there, Alvarez saw girls working as prostitutes who would walk up to car windows and proposition random men driving into the hotel and talking to them about prices for sex. *Id.* Alvarez saw girls get into the cars with random men for short periods of time and drive off to a dark corner of the parking lot for 15 or 20 minutes. *Id.* On average, Alvarez saw about six girls who appeared to be prostitutes at the hotel. *Id.* The ages

---

[3] Every one of these girls who were sold for sex under the age of 18 are victims of sex trafficking at the hotel regardless of force, fraud, or coercion, because a minor cannot legally engage in commercial sex. A minor engaging in commercial sex is always sex trafficking. 18 U.S.C. § 1591(a). Each time a minor was sold at the hotel, what the hotel witnessed was another act of sex trafficking.

of these girls ranged from teenagers to women in their 40s. *Id.* The prostitution activity Alvarez saw happened at all hours, in the day and night, and it was obvious and not hidden. *Id.* Alvarez saw employees walking around the hotel who would have seen the same things that Alvarez saw there, but Alvarez never saw any employees intervene or try to stop or discourage the obvious illegal activity. *Id.*

14-year-old A.R. was unlawfully harbored, raped, and sex trafficked at Defendant's hotel over the course of four days from February 6, 2015 through February 9, 2015. [ECF No. 1, ¶ 1]. Upon checking in the hotel, Plaintiff's two older, male traffickers were assigned one room, then another, both of which the traffickers decided were insufficiently secluded for sex trafficking, in part due to the placement of security cameras around the rooms. *Id.* ¶ 7. The traffickers requested a third room assignment, seeking one without cameras directly outside the door and more private. *Id.* The hotel staff cooperated once more, and the traffickers were assigned Room 317, out of direct view of the security cameras. *Id.* Thus, with the hotel's help, A.R.'s traffickers could sell her without concern of the police obtaining recorded evidence from the hotel's camera system.

Once in Room 317, hotel staff visited the room multiple times and observed A.R. and her traffickers inside. *Id.* A.R. recalls one occasion when Hotel staff observed her, a 14-year-old, in the room wearing only a bra and panties, accompanied by her two adult male traffickers. *Id.* During this visit, the traffickers

had a visibly displayed assault-style gun inside the room. *Id.* That time, when the hotel staff entered the room, the traffickers demanded they leave, but not before A.R.—a 14-year-old in her underwear—obtained new towels and handed over a trash bag containing multiple used condoms. *Id.*

Faced with this alarming situation—a 14-year-old girl in her bra and panties in a room with two adult men, an assault-style weapon, and a trash bag of used condoms—the Hotel staff allowed the trafficking to continue at the hotel. *Id.* Rather than intervening, investigating, or notifying law enforcement about these obviously suspicious activities, Defendant's hotel staff adhered to and furthered their policy assisting and permitting sex trafficking at the hotel. *Id.* By doing so, the Hotel staff actively facilitated A.R.'s trafficking, allowing the abuse and exploitation of the child to continue uninterrupted.

Over the next few days, Defendant observed approximately 12 to 15 adult males entering and leaving the hotel room after brief visits. *Id.* During each of these visits, A.R.'s two traffickers exited the room and waited outside while the male buyers raped the 14-year-old A.R. inside. *Id.* Considering what the hotel staff had seen inside the room, the intentional placement of the traffickers to help them avoid detection, Defendant once again adhered to and furthered its policy of allowing and permitting sex trafficking—A.R.'s minor sex trafficking—at the hotel. *Id.*

## II.    MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard in not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.    ARGUMENT

### A.    The hotel's conceded involvement in permitting other sex trafficking ventures is relevant and admissible to prove the hotel's involvement in A.R.'s trafficking.

As an initial matter, Defendant's assertion that Moore's and Alvarez's evidence of trafficking at the hotel is not relevant to A.R.'s later trafficking is contrary to the law. The detailed factual evidence of numerous hotel staff members being directly involved in facilitating and knowingly permitting sex trafficking at the hotel is evidence that the hotel's *modus operandi* was to do just that: permit and facilitate sex trafficking, including minor sex trafficking, at the hotel because it was profitable for the hotel to do so. Courts permit such *modus operandi* evidence in TVPRA cases to prove exactly what Defendant asserts is missing, its knowledge that it facilitated A.R.'s sex trafficking. For example:

8

> Under the TVPRA, courts have allowed a showing of a defendant's modus operandi to be sufficient for establishing knowledge. *See Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (ruling that establishing the defendant's modus operandi was a permitted method to demonstrate knowledge under the TVPRA); *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the [TVPRA] requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution"); *Boyce v. Weber*, No. 19-CV-3825 (JMF), 2021 WL 2821154, at *4–6 (S.D.N.Y. July 7, 2021) (permitting modus operandi to establish knowledge under the TVPRA). Courts have also found that a defendant's actions subsequent to the events charged in a suit were permitted to show the defendant had a modus operandi. *Turner v. United States*, 426 F.2d 480, 483–84 (6th Cir. 1970) (allowing evidence of stolen automobiles after the charged theft to prove defendant's modus operandi); *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974) (articulating that a subsequent incident is permitted to show modus operandi if the subsequent act "bears such a high degree of similarity as to mark it as the handiwork of the accused").

*Treminio v. Crowley Mar. Corp.*, 3:22-cv-174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024), *reconsideration denied,* 3:22-cv-174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024).

*Modus operandi* evidence may be used to show knowledge and lack of mistake as well as identity. *Id.* Thus, it is a permissible inference that the hotel's interactions with A.R. were not unknowing mistakes, but rather, that the hotel operated in accord with its usual practices and policies in allowing sex trafficking, just as it did in 2014, for example, by knowingly participating in Pink's sex trafficking ventures. As to identity—and even Defendant concedes the complaint alleges the hotel's knowing participation in Pink's sex trafficking ventures, see n. 1

9

above—it is a permissible inference that Defendant is identified as committing similar acts of participation as to A.R.

To prove identity by *modus operandi*, the Eleventh Circuit looks at the similarities between the alleged crimes. *United States v. Acevedo*, 860 Fed. Appx. 604, 610 (11th Cir. 2021). In *Acevedo*, the Court of Appeals affirmed the use of *modus operandi* evidence of other crimes because they were close in time (within a year), within the same geographic area, and were largely identical crimes. *Id.* Here, comparing the participation in Pink's sex trafficking venture to A.R.'s, the crimes occurred within a year of each other, in the exact same location, the hotel. The crimes were also identical—minor sex trafficking. What's more, the details are strikingly similar, with the hotel taking an active role in disabling or evading its own surveillance cameras so as not to create incriminating video evidence of trafficking. Also, hotel employees were inside each room seeing the evidence of trafficking of young girls like the 14-year-old A.R., and the 15–18 year olds trafficked (among others) by Pink. Thus, the *identity* of the hotel as participating in both crimes, as well as the hotel's *knowledge* that it was doing so, are both supported by the *modus operandi* evidence Defendant concedes shows the hotel's participation in sex trafficking. *Id.*; *Treminio*, 2024 WL 382400, at *6.

Because both Defendant's participation and knowledge may be proved by this *modus operandi* evidence, Defendant's motion should be denied.

## B.    A.R. states a claim under the TVPRA.

Trafficking victims may recover civilly against any person who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).  Plaintiffs must prove Defendant:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*D.H. v. Tucker Inn Inc.*, No. 22-cv-3419, 2023 WL 6538391, at *3 (N.D. Ga. Sept. 1, 2023) (citing *Doe #1 v. Red Roof Inns*, 21 F.4th 714, 726 (11th Cir. 2021)). Here, Defendants only argue that A.R.'s allegations fail to establish that the hotel "participated" in a venture that resulted in Defendants financially benefitting from Plaintiff's trafficking. Defendant does not argue, and thus concedes, all other elements.

Plaintiff's Complaint specifically alleges that "Defendants participated in a hotel venture and knew or should have known that their operation violated the TVPRA by harboring and maintaining Plaintiff so that she could be sold for sex at the Hotel." [ECF No. 1, ¶ 44]. Plaintiff further alleges that "Defendants also participated in a venture by cooperating with and allowing Plaintiff's sex traffickers to harbor and traffic Plaintiff at Defendant's Hotel." *Id.* ¶ 44.

### i.    Defendants participated in a venture by operating a hotel that Defendants knew or should have known violated the TVPRA.

Here, participation in the relevant venture is the operation of the hotel. The hotel is an enterprise involving risk and potential profit. And renting a room to sex traffickers *is* participating in trafficking. The only distinction between criminal liability, civil liability, or no liability is whether the hotel venture knew (criminal liability) or should have known (civil liability) or did not know and should not have known (no liability) that the hotel room was being used for sex trafficking.

A hotel can be operated in such a manner that the company that owns the hotel can be convicted of *criminal* sex trafficking. *See, e.g.*, *United States v. Bhimani*, No. 3:17-cr-324, ECF No. 16 (M.D. Pa.).[4] *Knowingly* renting rooms to a sex trafficker is a criminal violation of 18 U.S.C. § 1591(a)(1) and (2) because the hotel is knowingly harboring under (a)(1) and knowingly benefitting under (a)(2).

For example, in *Bhimani*, the manager of the hotel was found to be acting within the scope of his employment, on behalf of the later-convicted corporate defendant, when he was "questioned about the practices at the hotel in allowing prostitution and drug activities to go on there." *United States v. Bhimani*, 492 F. Supp. 3d 376, 388 (M.D. Pa. 2020), aff'd, No. 22-1436, 2023 WL 5125056 (3d Cir. Aug. 10, 2023). Thus, the hotel company's conviction in *Bhimani* shows that

---

[4] A.R. attaches the verdict form hereto as Ex. 1.

operating a hotel by allowing others to engage in sex trafficking, *is* participation in the sex trafficking ventures there. Otherwise, the conviction, affirmed by the Third Circuit, would be a sham.

If knowingly renting rooms to sex traffickers can lead to criminal liability, it necessarily leads to civil liability. But civil liability under the TVPRA does not even require the same heightened "knowing" requirement as criminal liability under the TVPRA. If a hotel rents a room to a sex trafficker and the hotel *should have known* the trafficker was using the room to traffic a victim, the hotel is civilly, but not criminally, liable. *See, e.g., D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1309–10 (N.D. Ga. 2023) (emphasis added). A hotel only avoids both criminal and civil liability for renting a room to a sex trafficker, if the hotel neither knew, nor should have known, that the room was being used for such purpose.

In this case, Plaintiff's complaint clearly and repeatedly alleges specific facts evidencing that the hotel either knew or should have known that it was participating in and financially benefitting from Plaintiff's sex trafficking by renting a room to Plaintiff's traffickers, ensuring that room would help them to avoid detection, and allowing the steady stream of men to come to the room to purchase the 14-year-old the hotel knew was inside the room with two men and an assault-style gun, needing towels and to get rid of used condoms. Defendant's attempt to dismiss Plaintiff's complaint before she is even able to begin discovery is wholly unfounded.

13

Defendants suggest that to be held liable under a civil TVPRA claim, hotel employees must be lookouts or actively and illegally assist Plaintiff's traffickers. This argument is an attempt to import an additional knowledge standard—the criminal standard found in 18 U.S.C. § 1591(e)—despite that in *Red Roof Inns*, the Eleventh Circuit explicitly rejected this precise argument. 21 F.4th at 724–25 (holding "the civil provisions of Section 1595(a) make no sense with Section 1591's definition of 'participation in a venture' read in" and applying the plain language of § 1595 instead.). Defendants' argument is wrong for the same reason—it would turn all civil defendants into criminal "perpetrators" and write out not only "should have known" from the statute, but also the creation of a civil claim against anyone other than the trafficker himself, which § 1595(a) explicitly provides. 18 U.S.C. § 1595(a) (creating claims against "the perpetrator *or whoever knowingly benefits* . . . financially . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) (emphasis added).

Given this, courts in the Northern District of Georgia have repeatedly held that a plaintiff's "allegations are sufficient because she alleges that ***Defendant had rented rooms to her trafficker and that Defendant knew or should have known that the trafficker was presently engaged in sex trafficking with Plaintiff.***" *Tucker Inn Inc.*, 2023 WL 6538391, at *3 (emphasis added); *see also A.G.*, 2022 WL 1644921, at *3 (N.D. Ga. May 24, 2022) (same); *G.W.*, 2022 WL 1644923, at *3

14

(N.D. Ga. May 24, 2022) (same).

Again, *Bhimani* is instructive. There, no hotel employee was acting as a "lookout." As relevant to the sex trafficking counts, the evidence showed that the hotel defendants

> knowingly rented rooms to drug and sex traffickers, gave discounts, allowed criminal guests to check in under assumed names, allowed guests to check in without showing identification, refrained from kicking guests out despite disruptive, criminal behavior, and allowed criminals to stay and work out of their room and pay the room rate with the proceeds. For example, evidence showed that Nanita Jewett, Donna Garippa, Maria Macedo, Krunal Patel, Kerri Labar, Isis Rosales, a cook named Butch, and Francis Joseph all knew about criminal activity occurring at the hotel. Jewett admitted to being aware of sex trafficking and telling victims to be careful, and Francis Joseph asked pimps about their girls and paid at least one victim for sex. Jewett and Joseph continued to rent rooms to these guests, and the hotel received the financial benefit [by having its room occupied].

*United States v. Bhimani*, CR 3:17-324, 2021 WL 5179196, at *9 (M.D. Pa. Nov. 8, 2021). Thus, the hotel company was convicted of *criminal* sex trafficking for less culpable conduct than what Defendant asserts is required to impose *civil* liability under a "should have known" standard.

*Red Roof Inns,* a case involving only hotel franchisors and the only binding precedent on the issue, supports this correct application of the legal standard. In *Red Roof Inns*, the plaintiffs were held to proving a "sex trafficking venture" because that is what they pled in their Complaint, not because it was required by the statute. *Red*

*Roof Inns, Inc.*, 21 F.4th at 726.[5] In fact, *Red Roof Inns* made very clear it was *not* the law and defined "participation in a venture" as "taking part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns, Inc.*, 21 F.4th at 724. That definition is not limited to knowing or intentional criminal conduct such as acting as a lookout for a trafficker. Further, Judge Jordan's concurrence in *Red Roof Inns* makes quite clear that participation in the sex trafficking act is *not* required in a § 1595 civil claim.

> [T]he participation element of a "beneficiary" claim under § 1595(a) does not require that the defendant in question have participated in the sex trafficking act itself. *See, e.g., S.Y.*, 476 F. Supp. 3d at 1256. Instead, as the court explains, "participation in a venture" requires only that a defendant take part in a common undertaking or enterprise involving risk and potential profit.

*Red Roof Inns, Inc.*, 21 F.4th at 730. Thus, Plaintiff need not prove participation in the actual sex trafficking acts, or participation in a criminal venture with the traffickers, as urged by Defendants. Participation in the operation of the Hotel venture itself is clearly sufficient, provided that there is evidence the Defendants knew or should have known they were renting rooms that were being used for sex trafficking. Even so, Plaintiff does make allegations in her Complaint that

---

[5] "Throughout their complaints, the Does alleged that the franchisors participated in 'sex trafficking ventures.'" *Red Roof Inns, Inc.*, 21 F.4th at 726. The Eleventh Circuit declined to consider a "hotel" venture because "it [was] incompatible with the allegations in the Does' complaints" and because "the Does failed to present this theory to the district court when given the opportunity." *Id.* at 727.

Defendants participated in specific acts that allowed her sex trafficking and caused it to continue, as discussed below.

> **ii.    Beyond operating a hotel venture, Defendants actively participated in Plaintiff's and other victims' sex trafficking.**

Even if Defendants were actually required to participate in a specific "sex trafficking venture," which is not the case under the TVPRA, then Plaintiff still alleges specific facts showing that Defendants participated in such acts involving Plaintiff and other sex trafficking victims.

For example, Plaintiff has attached as Exhibit A to her Complaint the signed declaration of eye-witness Brittney Moore who stayed at the Hotel for about four to five months in 2014, immediately prior to Plaintiff's trafficking in early 2015. [ECF No. 1, ¶ 27, Ex. A]. During this time, Moore observed that two people named Pink and Jit were trafficking lots of young girls at the hotel. *Id.* Moore saw a minimum of 20 different girls that Pink and Jit sold for sex at the hotel while Moore was there. *Id.* According to Moore, these girls were all very young and ranged in age from about 15 years old to about 22 years old. *Id*. The girls were dressed in fishnet stockings, tops with holes showing their nipples, and other provocative clothing. *Id*. Pink would take pictures of the girls to post in ads, and **at times, a hotel front desk employee would be in Pink's room when she was taking these pictures of the young girls to sell for sex**. *Id*. Pink told Moore that Pink had people at the hotel "in her pocket." *Id.* **Pink paid the front desk employees extra money to be lookouts**

17

**and allow the sex sales to continue at the hotel**, and employees used to come hang out and party in Pink's room. *Id*. **There was also a hotel housekeeper who would allow Pink's sex operation to continue by letting the housekeeper have sex with some of the girls Pink kept at the hotel**. *Id*. Moore also once **saw a hotel front desk worker disconnect the wires from the cameras next to Pink's room on a particularly busy night**. *Id.*

All these specific factual allegations demonstrate that the Hotel actively participated in permitting sex trafficking to occur and perpetuate at its property. Indeed, the Hotel's active participation and open facilitation allowed sex trafficking to fester at the property, so that when Plaintiff was transported to the property in early 2015, the hotel staff treated them very similarly to how Pink's operation was treated. The staff were friendly with Plaintiff's traffickers and allowed Plaintiff's traffickers, who were armed with an assault style gun, to escort A.R. out of their car and take A.R. to a hotel room. *Id.* ¶¶ 12–13. While being escorted to the room, A.R. personally observed numerous young girls and women who were standing around different parts of the hotel wearing very revealing clothing and who appeared to be engaged in prostitution or sex-trafficking activity, including talking to men or openly displaying and advertising themselves for sex. *Id.* at ¶ 14. All reasonable inferences suggest that the hotel participated in and openly allowed this activity to occur

because that was its policy and *modus operandi*. And that caused and contributed to Plaintiff's and other victims' trafficking.

As to Plaintiff in particular, the hotel specifically participated in her sex trafficking in the following ways: (1) the hotel staff moved A.R.'s two adult male traffickers to a room in the hotel that was chosen specifically to evade the surveillance cameras; (2) the hotel saw and permitted, over a short period of time, approximately 12–15 different men to visit A.R.'s room, rape her, and leave, while the traffickers waited outside the room door; and (3) the hotel staff entered A.R.'s room and personally observed the 14-year-old in her bra and panties with the two adult traffickers who were openly displaying an assault style gun and the staff provided the teenager with extra towels to clean between the men coming to the room and removed the used condoms from the room. *Id.* at ¶ 7.

By all potential standards of analysis, these specific factual allegations cause Plaintiff's complaint to survive Defendant's motion to dismiss. In fact, it would be wholly backwards for the Court to simply accept Defendant's argument at the motion to dismiss stage that Defendant was an unknowing and innocent bystander that did not participate in a venture that financially benefitted from Plaintiff's sex trafficking. Further, as to Defendants' knowledge or lack thereof, it is well established that a federal claim's "knowledge element" "can be proved by demonstrating either actual knowledge or deliberate ignorance," *United States v.*

*Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000), as well as by its *modus operandi* on other occasions. *Treminio*, 2024 WL 382400, at *6. "[I]f a party has his suspicions aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge." *Prather*, 205 F.3d 1265, 1270. And to prove either actual knowledge or deliberate ignorance, Plaintiff may rely on both direct evidence and circumstantial evidence based on the "totality" of circumstances. *United States v. Perez*, 698 F.2d 1168, 1171 (11th Cir. 1983); *see also Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D. Ga. 2023).

Here, Plaintiff's complaint, viewed in the light most favorable to Plaintiff, clearly supports the inference that under the "totality of the circumstances" the hotel *knew* (or at least should have known) that Plaintiff was being trafficked at the hotel, and that Defendants were participating in a venture that financially benefited from the 14-year-old's trafficking.

## C.    The Court should deny Defendants' motion to dismiss A.R.'s nuisance claim.

O.C.G.A. § 41-1-1 provides the following, considerably broad, definition of a "nuisance" under Georgia law:

> "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact the act done may otherwise be lawful shall not keep it from being a nuisance.  The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

If a hotel allows prostitution, sex-trafficking, and other crime to occur openly and

rampantly at its property, and a result of the hotel's creation of this open-air criminal marketplace, a 14-year old girl is then transported to the hotel and held hostage at the property for four days and is repeatedly raped and sold for sex to between 12 and 15 adult male strangers, then at minimum, that young girl has a plausible facial claim that hotel created a nuisance that caused her hurt, inconvenience, or damage within the meaning of Georgia law. Defendants' argument that Plaintiff's complaint cannot even survive a motion to dismiss is spurious.

O.C.G.A. § 41-1-2 provides that:

 "[n]uisances are either public or private.  A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals.  A private nuisance is one limited in its injurious effects to one or a few individuals."

Here, Plaintiff has offered numerous factual allegations, including two eye-witness declarations about the rampant prostitution, sex-trafficking, and criminal activity that took place at the hotel.  [ECF 1, Exs. A and B]. Plaintiff has specifically alleged in her complaint facts that would establish either a "private nuisance" or alternatively a "public nuisance" that caused or contributed to her own injury and exploitation. *Id.* ¶¶ 52 – 65.

With respect to a private nuisance, when there has previously been repeated third-party crime on a property, and then the plaintiff is injured by the same or similar type of crime, Georgia law permits a nuisance claim if the defendant "created or maintained a continuous or regularly repeated act or condition on the property,

which caused [plaintiff's] injury." *Bethany Grp., LLC v. Grobman*, 315 Ga. App. 298, 302, 727 S.E.2d 147, 150 (2012) (finding there was "ample evidence" for a nuisance claim when a cab driver was shot at an apartment complex with a history of prior crime). These types of nuisance claims regularly arise in personal injury lawsuits for crime victims. *See e.g., Camelot Club Condo. Ass'n, Inc. v. Afari-Opoku*, 340 Ga. App. 618, 618, 798 S.E.2d 241 (2017) (again finding "ample evidence" for a nuisance claim when there was a murder in the parking lot of gated community with a history of prior crime). Here, Plaintiff's complaint sets forth sufficient allegations of regularly repeated similar crimes on Defendant's property prior to Plaintiff's sex trafficking, so as to create a triable issue as to a private nuisance claim, and at least sufficient factual allegations for purposes of surviving a motion to dismiss.

As to public nuisance, under Georgia law, a public nuisance consists of an establishment that creates a "blighting effect on the surrounding community." *See Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 717, 850 S.E.2d 267 (2020) (overturned on other grounds) (citing *Cronic v. State*, 222 Ga. 623, 623–24, 151 S.E.2d 448 (1966) (business selling alcohol without a license was alleged to invite "persons of questionable character; that said business establishment encouraged idleness, loitering, vagrancy, and had a tendency to breed crime and debauch the morals of the community" and was thus a nuisance)); *Gullatt v. State*,

22

169 Ga. 538, 542, 150 S.E. 825 (1929) ("the maintenance of a gaming-house or a gaming-place is a public nuisance"); *Chancey v. Hancock*, 233 Ga. 734, 734, 213 S.E.2d 633 (1975) (operating a "blind tiger" or unlicensed liquor store was a "public nuisance" because it "encourage[d] idleness, loitering, vagrancy and ha[d] a tendency to breed crime and debauch the morals of the community"). In the *Saint Joseph's* case brought up by Defendant, the Court of Appeals specifically noted that one reason for the dismissal is that the plaintiff *did not* "allege that church operations had an appreciable blighting effect on the surrounding community, such as a gambling establishment or unlicensed liquor store. 357 Ga. App. at 717 (vacated on other grounds). Even though Defendant concedes that Plaintiff has plausibly alleged that the hotel knowingly participated in the criminal sex trafficking of at least 20 victims trafficked by Pink,[6] Defendant still argues that knowingly allowing that level of sex trafficking at a business does not have a "blighting effect on the surrounding community." Put simply, rampant minor sex trafficking as alleged in Plaintiff's complaint, harms the surrounding community.[7] Adult businesses like strip clubs

---

[6] *See* n. 1, *supra.*

[7] *See, e.g.,* VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT OF 2000, PL 106–386, October 28, 2000, 114 Stat 1464 ("Trafficking in persons substantially affects interstate and foreign commerce. Trafficking for such purposes as involuntary servitude, peonage, and other forms of forced labor has an impact on the nationwide employment network and labor market. Within the context of slavery, servitude, and labor or services which are obtained or maintained through coercive conduct that amounts to a condition of servitude, victims are subjected to a range of violations.").

have been noted by the Eleventh Circuit for their "increased crime and neighborhood blight." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1361 (11th Cir. 1999). Permitting *minor* sex trafficking is even worse. It is surprising that Defendant would attempt to argue that illegal sex trafficking does not have a similar effect. Again, Plaintiff has alleged sufficient facts in her complaint, so that her complaint should not be dismissed.

Finally, O.C.G.A. § 41-3-1 provides that:

> Whosoever shall knowingly erect, establish, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges[8] shall be guilty of maintaining a nuisance; and the building, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance.

In short, Georgia law provides a specific statute establishing that any property owner that permits sex trafficking, public indecency, or prostitution on their premises "shall be guilty of maintaining a nuisance." O.C.G.A. § 41-3-1(a–b). Plaintiff has pled ample allegations to establish that the Defendant hotel was doing exactly this.  And as repeatedly noted, Defendant has conceded Plaintiff's allegations regarding its participation in knowingly allowing Pink's sex trafficking ventures. In addition to statutory law, Georgia common law has long held permitting prostitution and other

---

[8] "Sexually related charges" is defined in O.C.G.A. § 41-3-1(a) to include, among other things, any violation of O.C.G.A. § 16-5-46 (trafficking a person for labor or sexual servitude), § 16-6-8 (public indecency) and § 16-6-9 (prostitution).

sexual acts at a business constitutes a nuisance. *See, e.g.*, *Gateway Books, Inc. v. State*, 247 Ga. 16, 276 S.E.2d 1 (1981) (adult movies); *Crews v. State ex rel. Hayes*, 215 Ga. 698, 113 S.E.2d 116, 117 (1960) ("evidence showing that prostitution existed at the location of the defendant's property . . . was sufficient to support the verdict abating the nuisance[.]"); *Carpenter v. State ex rel. Hains*, 195 Ga. 434, 24 S.E.2d 404 (1943) (prostitution); *Henson v. Porter*, 149 Ga. 83, 99 S.E. 118 (1919) (same).

Plaintiff's allegations as to nuisance are well-plead and survive Defendant's motion to dismiss.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss should be denied.

Respectfully submitted this 24th day of January, 2025.

              **ANDERSEN, TATE, and CARR, P.C.**

              */s/  Tyler  Dillard*_____
              Patrick J. McDonough
              Georgia Bar No. 489855
              pmcdonough@atclawfirm.com
              Tyler A. Dillard
              Georgia Bar No. 115229
              tdillard@atclawfirm.com
              Jonathan S. Tonge
              Georgia Bar No. 303999
              jtonge@atclawfirm.com
              *Attorneys for Plaintiff*

25

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## **CERTIFICATION**

This is to certify that the foregoing Plaintiff's Brief in Support of Her Opposition to Defendant's Motion to Dismiss has been prepared with one of the following font and point selections approved by the court in LR 5.1, NDGA. Specifically, the above-mentioned pleading was prepared using Times New Roman, 14-point font.

This 24th day of January, 2025.

**ANDERSEN, TATE, and CARR, P.C.**

*/s/  Tyler Dillard*_____
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Tyler Dillard
Georgia Bar No. 115229
tdillard@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day I electronically filed the foregoing Plaintiff's Brief in Support of Her Opposition to Defendant's Motion to Dismiss with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Respectfully submitted this 24th day of January, 2025.

**ANDERSEN, TATE, and CARR, P.C.**

*/s/ Tyler Dillard*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Tyler A. Dillard
Georgia Bar No. 115229
tdillard@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile